UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| MARY L. FERGUSON, | ) | No. SA CV 10-1968-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 27, 2010, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on January 12, 2011, and January 20, 2011. Pursuant to the Court's Order, the parties filed a Joint Stipulation on July 13, 2011, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on May 10, 1950. [Administrative Record ("AR") at 203, 226.] She has at least a twelfth grade education,[1] and past relevant work experience as a school secretary, executive secretary, sales representative, and sales clerk. [AR at 27-28, 105-07, 131.]

On March 20, 2009, plaintiff filed her application for Disability Insurance Benefits, alleging that she has been unable to work since May 1, 2006, due to terminal multiple myeloma, neuropathy in her hands and feet, pain in her feet, and cataracts in both eyes. [AR at 112-13, 203-04, 229-36, 262-69.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 114-17, 123-30.] A hearing was held on April 22, 2010, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 78-111.] A medical expert and a vocational expert also testified. [AR at 98-109.] On May 5, 2010, the ALJ determined that plaintiff was not disabled. [AR at 21-28.] On October 28, 2010, the Appeals Council denied plaintiff's request for review. [AR at 1-4.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

---

[1] There is conflicting evidence in the record as to whether plaintiff's highest level of completed education is the twelfth grade [see AR at 235, 256] or college [see AR at 131].

1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since her alleged disability onset date, May 1, 2006. [AR at 23.][2] At step two, the ALJ concluded that plaintiff has the severe impairments of multiple myeloma, with neuropathy; hypertension, without evidence of end organ damage; disorder of the cervical spine, as of January 2010; disorder of the lumbar spine, as of January 2007; and arthritis at multiple sites -- the right foot, left hip, and left shoulder. [AR at 23-24.] At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 24.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform "light work" as defined in 20 C.F.R. § 404.1567(b),[4] except that plaintiff can "lift and carry 20 pounds occasionally [and] 10 pounds frequently; sit for 8 hours

---

[2] The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2012. [AR at 23.]

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4] 20 C.F.R. § 404.1567(b) defines "light work" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."

out of an 8 hour day; stand and walk for 6 hours out of an 8 hour day; change positions briefly for 1 to 3 minutes every hour; occasionally balance, stoop, kneel, crouch, crawl, and climb; no heights; no hyper-vigilance required; and occasional above shoulder level work with either upper extremity (from January 2009 forward)." [Id.]  At step four, the ALJ concluded that plaintiff is capable of performing her past relevant work as a school secretary and executive secretary. [AR at 27.]  Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 28.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly evaluate plaintiff's subjective symptom testimony.  [Joint Stipulation ("JS") at 4.]  As set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.3d 341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of her symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so.  See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  If properly supported, the ALJ's

credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Plaintiff testified, in part, that she is no longer able to wear footwear because of the neuropathy in her feet, and that her keyboarding suffers because of the neuropathy in her hands. [AR at 89-90.] She also testified that she experiences tremors in her hands and has difficulty holding things. [AR at 97.]

At step one, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." [AR at 25.] Thus, at step two, as the record contains no evidence of malingering by plaintiff,[5] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting plaintiff's subjective symptom testimony. See Lingenfelter, 504 F.3d at 1036. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918. An ALJ may consider whether a lack of objective medical evidence supports the degree of limitation, but this "cannot form the sole basis for discounting pain testimony." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "The rationale for this restriction is that pain testimony may establish greater limitations than can medical evidence alone." Burch, 400 F.3d at 680 (citing Social Security Ruling[6] 96-7p).

/
/
/
/
/

---

[5] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

[6] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

The ALJ concluded that plaintiff was not credible because plaintiff's "complaints are not entirely consistent with the objective medical evidence of record and with other statements she made about her condition." [AR at 25, 27.] As to inconsistency with the medical evidence, the ALJ found plaintiff's statement that she has terminal multiple myeloma and only a few years left to live to be incredible because plaintiff's multiple myeloma has been in complete remission with no recurrence since March 2007. [AR at 27.] In addition, the ALJ found plaintiff's statement that she has neuropathy symptoms in her upper extremities to be incredible because electromyography and nerve conduction studies performed on plaintiff revealed axomal sensory neuropathy only in plaintiff's bilateral lower extremities, and because "[t]here is no objective evidence of any hand or upper extremity impairment that would affect her work capabilities, except for the neck and shoulder impairments discussed and accounted for [in the RFC assessment]." [Id.]

While the ALJ stated that he found her credibility to be affected by "the consistency of her statements . . . with other statements she made about her condition," the ALJ failed to identify *any* inconsistencies in plaintiff's own statements. Thus, the ALJ failed to offer specific, clear and convincing reasons for rejecting plaintiff's testimony on this ground. As such, the ALJ effectively rejected plaintiff's subjective symptom testimony on the sole ground that plaintiff's "complaints are not entirely consistent with the objective medical evidence of record."

Even assuming the ALJ's characterization of the medical evidence is supported by substantial evidence, the ALJ cannot rely solely upon this rationale to discount plaintiff's credibility. See Burch, 400 F.3d at 681. Rather, the Commissioner states that "symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." SSR 96-7p. Thus, the ALJ also erred in finding plaintiff incredible on the ground that her complaints were "not entirely consistent" with the record.

Moreover, there is evidence in the record to support plaintiff's testimony on the two issues for which the ALJ found plaintiff's testimony "not entirely consistent" with the record. First, plaintiff was diagnosed in December 2005 with Stage III multiple myeloma "involv[ing] 60% of the marrow cellularity and approximately 50% of the marrow space." [AR at 966.] Plaintiff contends, and defendant does not dispute, that plaintiff's diagnosis in layman's terms was for "an incurable

7

cancer of her plasma cells, a type of white blood cell present in the bone marrow that results in a survival rate of one in five for four years or longer." [JS at 4-5.][7] Thus, plaintiff's statement that she has "terminal multiple myeloma" and only a few years left to live is not inconsistent with the record. Second, the record contains evidence that supports plaintiff's testimony that she has symptoms of neuropathy in her arms and hands. On December 28, 2005, upon plaintiff's first examination by treating physician Dr. James Berenson [see AR at 232], Dr. Berenson noted that plaintiff's side effects from taking Thalidomide for her multiple myeloma included "neuropathy characterized as tingling in her jaw, feet and hands bilaterally." [AR at 967.] On April 16, 2008, Dr. Tariq Mahmood, plaintiff's oncologist, found that plaintiff had decreased reflexes in both her upper and lower extremities. [See AR at 499.] On December 9, 2009, Dr. Mahmood found that plaintiff's "reflexes are absent in both upper [sic] and the lower extremities," and noted that plaintiff "is unable to feel the keyboard[] when she tries to type because of severe neuropathy." [AR at 64.] On February 10, 2010, Dr. Mahmood again noted that plaintiff had neuropathy in her upper and lower extremities.[8] [AR at 61.]

The ALJ did not offer a legally adequate reason for discounting plaintiff's credibility. Remand is warranted.

/
/
/
/
/
/

---

[7] Plaintiff cites the American Medical Association, Encyclopedia of Medicine, p. 701 (1989) for this proposition. [See JS at 4-5.] Defendant does not object or offer contradictory statistics regarding Stage III multiple myeloma.

[8] The Court also notes that, while the ALJ found plaintiff incredible because of alleged inconsistencies in plaintiff's statements, between June 2006 and April 2010, plaintiff complained multiple times of tingling, numbness, tremors, and "pins and needles" in her hands and arms [see AR at 346, 501, 533, 540, 918], which is consistent with her testimony that she has neuropathy in her hands [see AR at 90].

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly evaluate plaintiff's subjective symptom testimony. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: September 9, 2011

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE